ROBERT D. GREENWALT, Plaintiff-Appellant, v. THE DEPARTMENT OF REVENUE *et al.*, Defendants-Appellees.

Second District No. 2—89—0872

Opinion filed June 5, 1990.

Robert D. Greenwalt, of West Chicago, for appellant.

Neil F. Hartigan, Attorney General, of Springfield (Michael J. Goldrick and Jan E. Hughes, Assistant Attorneys General, of Chicago, of counsel), for appellees.

JUSTICE REINHARD delivered the opinion of the court:

Plaintiff, Robert D. Greenwalt, brought this action in the circuit court of Du Page County against defendants, the Department of Revenue and Jerome Cosentino, Treasurer of the State of Illinois, seeking a declaration that section 3—1001 of the Illinois Vehicle Code (Ill. Rev. Stat. 1987, ch. 95½, par. 3—1001), which imposes a tax on the privilege of using certain automobiles in this State, is unconstitutional. Plaintiff further sought a refund of his payment of the tax paid under protest. Plaintiff's amended complaint alleged that during 1988 he purchased a used 1986 model year automobile from a private party for $17,000 and that section 3—1001 imposed a tax of $750 on the transaction. Cross-motions for summary judgment were filed, and the trial court entered summary judgment in defendants' favor, from which plaintiff now appeals.

While plaintiff's appellate brief is somewhat imprecise, we perceive therein the following contentions: (1) the statutory scheme for taxation of the use of automobiles unfairly discriminates against purchasers in nonretail transactions by failing in such transactions to take into account the value of a vehicle traded in, or the value of a vehicle sold by the purchaser where the proceeds of such sale are applied to the purchase; (2) the scheme discriminates against nonretail purchasers by imposing on them the burden of contributing to the Build Illinois Fund; (3) the two-tier rate structure under section 3—1001 is arbitrary; and (4) the tax imposed is an improper *ad valorem* tax.

At the outset, we briefly examine the several taxation statutes involved in this appeal and their operation in transactions involving vehicles. The Retailers' Occupation Tax Act (Ill. Rev. Stat. 1987, ch. 120, par. 440 *et seq.*), with certain exceptions, imposes a tax upon

"persons engaged in the business of selling tangible personal property at retail at the rate of 5% of the gross receipts from such sales of tangible personal property made in the course of such business." (Ill. Rev. Stat. 1987, ch. 120, par. 441.) The retailers' occupation tax is not a privilege tax on the consumer, a property tax on the goods or a sales tax on the transaction, but, rather, it is a tax on the business of selling tangible personal property at retail. *H. Kohnstamm & Co. v. Department of Revenue* (1956), 9 Ill. 2d 182, 183-84, 137 N.E.2d 354; *United Technical Corp. v. Department of Revenue* (1982), 107 Ill. App. 3d 1062, 1064, 438 N.E.2d 535.

■ The Use Tax Act (Ill. Rev. Stat. 1987, ch. 120, par. 439.1 *et seq.*), subject to certain exceptions, imposes a tax upon "the privilege of using in this State tangible personal property *** purchased at retail from a retailer." (Ill. Rev. Stat. 1987, ch. 120, par. 439.3.) Where the property functionally used or consumed is the same as the property which was purchased at retail (as opposed to a by-product or waste product refined, manufactured or produced from the property purchased at retail), the tax is imposed at the rate of 5% of the selling price of such property. Ill. Rev. Stat. 1987, ch. 120, par. 439.3.

Illinois retailers are required to collect the use tax from purchasers by adding the tax to the selling price of property sold. (Ill. Rev. Stat. 1987, ch. 120, par. 439.3.) However, "[a] retailer need not remit that part of any tax collected by him to the extent that he is required to remit and does remit the tax imposed by the 'Retailers' Occupation Tax Act,' with respect to the sale of the same property." (Ill. Rev. Stat. 1987, ch. 120, par. 439.9.) With respect to property acquired in another State, a person may deduct from his use tax obligation the amount of tax he has paid in the other State with respect to the sale, purchase or use of the property. (Ill. Rev. Stat. 1987, ch. 120, par. 439.3(d).) "Functionally, the Use Tax Act serves to tax property purchased out of State by Illinois residents that is not taxable under the Retailers' Occupation Tax Act, or the tax act of another State. The Use Tax Act thus prevents the avoidance of the Retailers' Occupation Tax Act and at the same time attempts to eliminate the competitive disadvantage of in-State businesses." *Chicago Tribune Co. v. Johnson* (1985), 106 Ill. 2d 63, 68, 477 N.E.2d 482.

An important feature of both the Retailers' Occupation Tax Act and the Use Tax Act is that, for purposes of determining tax owed, the value of property traded in of like kind to the property purchased is deducted from the purchase price. Ill. Rev. Stat. 1987, ch. 120, pars. 439.1, 440.

■ The statutory provision under challenge here, section 3—1001

of the Illinois Vehicle Code as amended effective January 1, 1988 (Ill. Rev. Stat. 1987, ch. 95½, par. 3—1001), imposes a tax on the privilege of using in Illinois a motor vehicle acquired by purchase. Essentially, the tax applies to the sale and purchase of vehicles between parties not usually engaged in the business of selling vehicles. With the exception of certain transactions taxed at a lower rate, the tax is imposed according to the following schedule:

"[T]he rate of tax shall be as follows for transactions in which the selling price of the motor vehicle is less than $15,000:

| Number of Years Transpired After Model Year of Motor Vehicle | Applicable Tax |
| --- | --- |
| 1 or less | $390 |
| 2 | 290 |
| 3 | 215 |
| 4 | 165 |
| 5 | 115 |
| 6 | 90 |
| 7 | 80 |
| 8 | 65 |
| 9 | 50 |
| 10 | 40 |
| over 10 | 25 |

*** the rate of tax shall be as follows for transactions in which the selling price of the motor vehicle is $15,000 or more:

| Selling Price | Applicable Tax |
| --- | --- |
| $15,000 - $19,999 | $  750 |
| $20,000 - $24,999 | $1,000 |
| $25,000 - $29,999 | $1,250 |
| $30,000 and over | $1,500" |

Ill. Rev. Stat. 1987, ch. 95½, par. 3—1001(vi).

No tax is imposed, however, if the use of the motor vehicle is taxed under the Use Tax Act or if the use of the motor vehicle is not subject to the Use Tax Act by reason of provisions dealing with the prevention of actual or likely multistate taxation. (Ill. Rev. Stat. 1987, ch. 95½, par. 3—1001.) Accordingly, section 3—1001 imposes a tax only on the use of vehicles not purchased at retail, whereas retail sales are taxed under the Use Tax Act.

It is to be observed that for transactions over $15,000, such as the transaction in the instant case, the rate of taxation will always be 5% or less of the selling price in contrast to the 5% assessed across the board under the Use Tax Act. However, unlike the Use Tax Act, section 3—1001 does not exclude the value of a trade-in vehicle from the

"selling price." Accordingly, under section 3—1001, a transaction involving like kind property worth more than the amount by which the selling price exceeds the lower amount of the bracket in which the transaction is taxed will give rise to a greater tax than a similar transaction taxed under the Use Tax Act. Plaintiff contends that such disparate treatment violates the requirement of uniform taxation in the Illinois Constitution of 1970 (Ill. Const. 1970, art. IX, §2).

In connection with this inquiry, we first consider plaintiff's standing to challenge the tax on this basis. The parties have not raised the issue of standing. Nonetheless, as the doctrine of standing is of straightforward application, we find it appropriate to consider the question of standing *sua sponte*. See *Pre-School Owners Association of Illinois, Inc. v. Department of Children & Family Services* (1988), 119 Ill. 2d 268, 287, 518 N.E.2d 1018.

■ Plaintiff contends that section 3—1001 unfairly discriminates against nonretail purchasers of vehicles who negotiate a trade-in with their sellers. However, nothing in the record suggests that plaintiff is within this class. Plaintiff did not allege that his transaction included a trade-in. In fact, plaintiff's memorandum in support of his motion for summary judgment suggests that plaintiff sold his previous vehicle to a third party in order to finance the purchase in question here. "Generally, a person to whom a statute may constitutionally be applied will not be permitted to challenge the statute on the ground that it could in another context be applied unconstitutionally to another party." (*People v. Holder* (1983), 96 Ill. 2d 444, 449, 451 N.E.2d 831; see also *People v. Capitol News, Inc.* (May 1990), Nos. 67480, 67481, 67482, 67483, cons., slip op. at 5; *Rosewood Corp. v. Fisher* (1970), 46 Ill. 2d 249, 259, 263 N.E.2d 833; *Acme Brick & Supply Co. v. Department of Revenue* (1985), 133 Ill. App. 3d 757, 766, 478 N.E.2d 1380.) We, therefore, decline to consider whether section 3—1001 operates in an unconstitutional manner in a hypothetical situation involving a trade-in in a nonretail transaction.

■ Plaintiff also asserts that section 3—1001 is unconstitutional because it does not account for "three party transactions," wherein the purchase of a vehicle is funded by the purchaser's sale to a third party of another vehicle, as apparently occurred in the instant case. Plaintiff supports this assertion with neither citation of authority nor substantial argument in violation of Supreme Court Rule 341(e)(7) (113 Ill. 2d R. 341(e)(7)). Accordingly, the contention is waived. Similarly, the bare assertion that, "[b]y not recognizing trade-ins, the Vehicle Use Tax is nothing but an *ad valorem* (personal property) tax and is unconstitutional *per se*," is waived. See *Spinelli v. Immanuel Lu-*

*theran Evangelical Congregation, Inc.* (1987), 118 Ill. 2d 389, 401, 515 N.E.2d 1222.

■ Plaintiff also contends that the statutory scheme for taxation of use of motor vehicles is unconstitutional because portions of the revenues collected under section 3—1001 go to the Build Illinois Fund whereas revenues under the Use Tax Act go to the general fund. However, plaintiff ignores the fact that a portion of the revenues under the Use Tax Act does indeed go into the Build Illinois Fund. Ill. Rev. Stat. 1987, ch. 120, par. 439.9.

■ Plaintiff also maintains that the two-tier rate structure under section 3—1001 is arbitrary because, for example, a two-year-old vehicle purchased for $14,999 would result in a $290 tax, whereas if the price were a dollar higher, the tax owed would be $750.

Article IX, section 2, of the Illinois Constitution of 1970 provides:

"In any law classifying the subjects or objects of non-property taxes or fees, the classes shall be reasonable and the subjects and objects within each class shall be taxed uniformly. Exceptions, deductions, credits, refunds and other allowances shall be reasonable." (Ill. Const. 1970, art. IX, §2.)

A classification is valid if based on a real and substantial difference between the people taxed and those not taxed, and the classification must bear some reasonable relationship to the object of the legislation or to public policy. *Searle Pharmaceuticals, Inc. v. Department of Revenue* (1987), 117 Ill. 2d 454, 468, 512 N.E.2d 1240.

We believe the legislature could reasonably distinguish between purchasers of higher and lower priced motor vehicles for the purpose of taxing their use. While section 3—1001 may result in somewhat disparate taxation in some circumstances, we find no constitutional infirmity.

Plaintiff also challenges the legislature's choice to tax the use of vehicles sold at nonretail while imposing no tax in connection with nonretail transactions involving other types of personal property. We believe the legislature could reasonably distinguish motor vehicles from other types of personal property.

For the foregoing reasons, the judgment of the circuit court of Du Page County is affirmed.

Affirmed.

UNVERZAGT, P.J., and INGLIS, J., concur.